[Cite as *Lomelino v. Lomelino*, 2020-Ohio-1645.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| DAVID LOMELINO, EXECUTOR OF THE ESTATE OF STANLEY R. LOMELINO, DECEASED | : : : | |
| | : | Appellate Case No. 28530 |
| Plaintiff-Appellant | : : | Trial Court Case No. 2018-CV-1646 |
| v. | : : | (Civil Appeal from Common Pleas Court) |
| CHRISTINE LOMELINO, et al. | : : | |
| Defendants-Appellees | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 24th day of April, 2020.

. . . . . . . . . . .

RICHARD A. BOUCHER, Atty. Reg. No. 0033614 and JULIA C. KOLBER, Atty. Reg. No. 0078855, 12 West Monument Avenue, Suite 200, Dayton, Ohio 45402
    Attorneys for Plaintiff-Appellant

DAVID D. BRANNON, Atty. Reg. No. 0079755, 130 West Second Street, Suite 900, Dayton, Ohio 45402
    Attorney for Defendants-Appellees

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Plaintiff-Appellant, David Lomelino, executor of the estate of Stanley R. Lomelino, appeals from a trial court judgment granting summary judgment for the Defendant-Appellees, Christine Lomelino and Rachel Lomelino, on claims to quiet title and for fraud and misrepresentation with regard to the transfer of a property owned by Stanley.[1] Appellant challenges only the trial court's determination of the quiet title action. Finding no error, we affirm.

## I. Facts and Procedural History

{¶ 2} In 2015, Stanley Lomelino was adjudicated a disabled adult by a court in Illinois, where, it appears, all the parties were living. Stanley's son David Lomelino and David's wife, Christine Lomelino, were named co-guardians of Stanley's person and estate. Later that year, Stanley, Christine, and Christine and David's daughter Rachel moved to Dayton, Ohio, to a house titled in Stanley's and Christine's names. David stayed behind in Illinois.

{¶ 3} In February 2016, the Ohio house was transferred into Stanley's name alone. Shortly after, Stanley met with an estate-planning attorney and told the attorney that, when he died, he wanted the house to go to Christine and Rachel. The attorney suggested that Stanley execute a transfer-on-death (TOD) designation affidavit naming his daughter-in-law and granddaughter as beneficiaries. Stanley agreed, and the attorney drafted an affidavit. Stanley executed it, and the affidavit was notarized. On March 29, 2016, the TOD designation affidavit was recorded in Ohio with the Montgomery County Recorder. Stanley did all of this without telling Christine or Rachel.

---

[1] Because the parties share a last name, we refer to them by their first names.

{¶ 4} In December 2016, the Illinois court replaced David and Christine as co-guardians of Stanley's estate with an Illinois attorney, Aaron Bellm. (David and Christine had filed for divorce earlier in the year. They remained co-guardians of Stanley's person.) In its order, the Illinois court stated, "Estate planning documents, including a will and trust entered into during the guardianship, were executed without legal authority. The Guardian of the Estate Bellm is authorized to take steps to invalidate and void all such estate planning documents as soon as possible." Wasting no time, Bellm almost immediately executed and filed a document in the guardianship purporting to "revoke all prior wills, codicils, trusts, and any other estate planning documents executed after July 29, 2015."

{¶ 5} Two months later, on February 24, 2017, Stanley, still an Ohio resident, died. Rachel, having learned of the TOD designation affidavit, executed an "Affidavit of Transfer on Death" attesting to Stanley's death for the purpose of showing that she and Christine were now the owners of the Ohio house. The affidavit was recorded on April 7, 2017, in Montgomery County, Ohio. When Bellm learned of this, he executed his own affidavit stating that the December 2016 Illinois revocation document had revoked Stanley's TOD designation affidavit. Bellm recorded his affidavit on June 9, 2017, in the Montgomery County recorder's office.

{¶ 6} David Lomelino was appointed executor of Stanley's estate by the Montgomery County Probate Court. On April 13, 2018, David filed an action in the Montgomery County Court of Common Pleas against Christine and Rachel to quiet title to Stanley's house. The complaint was captioned in the name of David as executor of the estate, but it also alleged that "Plaintiff is the sole owner of the Real Estate," making the allegations unclear as to whether the estate or David was the designated plaintiff.

However, the appellant's brief represents "[t]he *Executor* filed a Complaint against the Defendants-Appellees." (Emphasis added). The complaint further alleged that the defendants claimed an interest in the property through a revoked TOD designation affidavit, leaving them with no right, claim, or interest in the property. It also claimed fraud, deceit, concealment, and/or misrepresentation. The complaint alleged that Christine and Rachel knew that Stanley had been adjudicated a disabled adult and that they got him to execute the TOD designation affidavit through "acts and omissions of false representation and concealment." According to the complaint, these acts and omissions were made with the intent to mislead the county recorder and damaged the plaintiff.

{¶ 7} Christine and Rachel moved for summary judgment, and David filed a cross-motion for summary judgment. On August 20, 2019, the trial court granted Christine and Rachel's motion and denied David's motion. The court concluded that David lacked standing to bring the quiet-title action because he failed to show that he satisfied the statutory requirements in R.C. 5303.01. The court found no evidence that David had either of the statutory requirements: that he had possession of the house or had a remainder or reversionary interest in it.

{¶ 8} The trial court also concluded that David's fraud and misrepresentation claims failed. As an initial matter, the court acknowledged that there was a conflict-of-law issue as to whether Illinois or Ohio law governed the TOD designation affidavit. The court found that Ohio has a strong interest in the TOD designation affidavit, noting that Ohio statutory law comprehensively addresses the requirements for a valid transfer on death. The court further found that Ohio's interest in upholding a transfer on death of Ohio real property outweighed Illinois's interest that its guardianship laws be enforced. Accordingly,

the court concluded that Ohio law should apply.

{¶ 9} The trial court also concluded that, under Ohio law, the TOD designation affidavit had not been vacated or voided by Bellm's revocation document, pointing out that the revocation was not final and determinative of the TOD affidavit, was not a court judgment, and did not mention TOD designation affidavits. The court also concluded that Bellm's later recording of the revocation document in Montgomery County had not voided or vacated the TOD designation affidavit either, because under Ohio law, a TOD revocation must be recorded before death to be effective. *See* R.C. 5302.23(B)(5).

{¶ 10} Lastly, the trial court concluded that the Ohio TOD designation affidavit was valid. The court found that Stanley had the requisite mental capacity to execute the affidavit, noting that all the evidence showed that, when Stanley executed the affidavit, he was competent and lucid and knew what he was doing. Furthermore, the court found that neither Christine nor Rachel knew anything about the affidavit beforehand. The court found that the undisputed evidence showed that neither defendant knew at the time that Stanley intended to or did execute the affidavit giving them the property. Indeed, each signed an affidavit stating that she was ignorant of Stanley's intentions. The court also concluded that there was no allegation or evidence that the defendants had a duty to disclose the Illinois guardianship to the county recorder. In sum, the court found no evidence that the defendants participated in the preparation of the affidavit. Instead, the evidence affirmatively showed that they had no role.

{¶ 11} David, as executor, appeals.

## II. Analysis

{¶ 12} The sole assignment of error alleges that the trial court erred by granting

the defendants' motion for summary judgment and by overruling David's motion for summary judgment. The only challenge is to the trial court's conclusion that David has no standing to bring the quiet-title action.

{¶ 13} "It is recognized in Ohio that actions to quiet title are permitted exclusively pursuant to statute." *Holstein v. Crescent Communities, Inc.*, 10th Dist. Franklin No. 02AP-1241, 2003-Ohio-4760, ¶ 26, citing R.C. 5303.01; *see also Ochsenbine v. Cadiz*, 166 Ohio App.3d 719, 2005-Ohio-6781, 853 N.E.2d 314, ¶ 11 (7th Dist.) ("An action to quiet title is a statutory cause of action under R.C. 5303.01."). R.C. 5303.01 pertinently states:

> An action may be brought by a person in possession of real property, by himself or tenant, against any person who claims an interest therein adverse to him, for the purpose of determining such adverse interest. Such action may be brought also by a person out of possession, having, or claiming to have, an interest in remainder or reversion in real property, against any person who claims to have an interest therein, adverse to him, for the purpose of determining the interests of the parties therein.

{¶ 14} This statutory language is the same language that years ago was in Revised Statute 5779. Because the language of R.C. 5303.01 is the same as it was in the earlier statute, "it is generally recognized in Ohio that the Ohio Supreme Court's interpretation of that language also remains consistent." *Holstein* at ¶ 28, citing *Chef Italiano Corp. v. Kent State Univ.*, 11th Dist. Portage No. 91-P-2308, 1992 WL 192005 (Feb. 21, 1992); *Paden v. Miller*, 5th Dist. Guernsey No. 00CA29, 2001 WL 1782890 (Feb. 8, 2001). In *Raymond v. Toledo*, 57 Ohio St. 271, 48 N.E. 1093 (1897), paragraph seven of the syllabus, the

Ohio Supreme Court stated that "Section 5779, [Revised Statutes], gives a right of action to quiet title to one out of possession who claims an estate or interest in remainder or reversion in real property. It does not give such right to one out of possession who claims the entire estate." So to bring an action to quiet title, one must meet the minimum statutory requirements of "possession of real property" or "an interest in remainder or reversion in real property."

{¶ 15} Here, there is no allegation in the complaint, nor is it anywhere claimed, that David was in possession of Stanley's house or that he or the estate had an interest in remainder or reversion in the house. There was certainly no evidence of either. Therefore, by law, the quiet-title action here could not be brought by David.

{¶ 16} David argues that estate executors should be treated differently. He quotes in support *Mitchell v. Bridgeport*, 8 Ohio App. 51, 56, 1917 WL 1031 (7th Dist.1917): "Where a testator has directed his executor to sell the lands for the purpose of carrying out the provisions of his will, such direction works a conversion of the property and carries with it the title and possession necessary to enable him to maintain any action which may be necessary to carry out the provisions of a will, including an action to quiet title."

{¶ 17} There are at least two problems with applying *Mitchell* here. First, the will in *Mitchell* "*directed* [the executor] to sell the real estate of the testatrix and to *make* deeds for the same and *convey* the title thereto to the purchaser." (Emphasis added.) *Mitchell* at 52. But in the present case, Stanley's will, according to David's brief (David did not cause the will to be made part of the record), stated only that the executor had the power " '[t]o sell at public or private sale, to retain, to lease, to borrow money and for that purpose to mortgage or to pledge all or part of the real or person [sic] property of my estate.' "

Unlike the will in *Mitchell*, there was no evidence that the will here directed the executor to sell Stanley's house, as opposed to granting the executor only a general power to sell estate property. Second, in *Mitchell* the property was part of the decedent's estate. A case that the *Mitchell* court relied on "held that where a testator makes no other disposition of his property except to direct that it shall be sold by his executors and the proceeds paid to a trustee for the benefit of certain legatees, the right of possession passes with the will to the executors to enable them to effect the object of the testator." *Id.* at 54, citing *Elstner v. Fife*, 32 Ohio St. 358, 1877 WL 128 (1877). But in the present case, the property was transferred outside of the probate estate. A TOD designation affidavit "supersede[s] any attempted testate or intestate transfer of that real property." R.C. 5302.22(B)(9). Stanley made "other disposition" of his house by executing a TOD designation affidavit. The affidavit, by law, vested title to the house in Christine and Rachel on Stanley's death. *See* R.C. 5302.22(C)(1).

{¶ 18} David's quiet title action claim was not that he was actually in possession of the property or had a remainder or reversionary interest in it. He claimed that he was the owner who *should be* in possession. As such, an action to remove the occupants would be an action for recovery of real property (ejectment) and arguably, or alternatively, would be brought by David Lomelino individually. R.C. 5303.03 describes a "Petition in action for land," where "the plaintiff states in his petition that he has a legal estate therein and is entitled to the possession thereof, * * * and that the defendant unlawfully keeps him out of the possession." Nonetheless, for the reasons stated, a quiet title action is not supported.

{¶ 19} In the end, even if there were standing, the quiet-title action would fail on its

merits, because the trial court also concluded that the TOD designation affidavit was effective to transfer title of the property to Christine and Rachel. Given the evidence, we do not believe that the trial court erred in reaching this conclusion. We also do not believe that the court erred in concluding that, as between Illinois law and Ohio law, Ohio law should prevail.

{¶ 20} Under Ohio law, a guardianship ward is not automatically prohibited from executing a will or otherwise making testamentary dispositions. To be sure there is a presumption that a person under guardianship lacks testamentary capacity, but that presumption is rebuttable. *Taylor v. Garinger*, 30 Ohio App.3d 184, 186, 507 N.E.2d 406 (12th Dist.1986). The degree of proof necessary to rebut this presumption is not high. *Id.* at 186-187; it is the same as the relatively low threshold of proof necessary to demonstrate testamentary capacity. *Hutchison v. Kaforey*, 2016-Ohio-3541, 67 N.E.3d 121, ¶ 20 (9th Dist.) citing the standard for testamentary capacity in *Niemes v. Niemes*, 97 Ohio St. 145, 119 N.E. 503 (1917), paragraph four of the syllabus. Here, Christine and Rachel presented unchallenged evidence of Stanley's testamentary capacity sufficient to overcome the presumption of lack of capacity. David limited his challenge to the TOD designation to one legal issue: whether the Illinois guardianship prohibited Stanley from having capacity to execute the TOD designation. David did not assert that Stanley factually lacked testamentary capacity.[2]

{¶ 21} Given the trial court's conclusion that Stanley had the requisite testamentary

---

[2] We recognize that Illinois law is somewhat different than Ohio law. In Illinois, it is not just a question of whether a ward has testamentary capacity. A ward must apply to the court for authority "to execute a will or codicil." Ill.Ann.Stat., Chapter 755 Section 5/11a-18 (d-5). But to obtain such permission, application would have to have been made to the Illinois court by an 89-year-old settled as a resident of Ohio.

capacity and that Ohio law should prevail in this instance upon Stanley's death, the TOD designation affidavit vested title to the property in Christine and Rachel. We conclude the trial court's decision on these issues was correct.

### III. Conclusion

**{¶ 22}** There was no evidence that David had possession of or a requisite interest in the subject property. Consequently, he could not bring a quiet-title action. The assignment of error is overruled. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and WELBAUM, J., concur.

Copies sent to:

Richard A. Boucher
Julia C. Kolber
David D. Brannon
Michele Phipps
Hon. Richard Skelton